Leonard GREENIDGE; Wilhemina Greenidge; Andrew Greenidge; Kwani Greenidge, Plaintiffs–Appellants,

v.

Ernestine RUFFIN, Defendant–Appellee,

and

Eric Cox; Charles Prehn; Baltimore City Police Commissioner; Arlene Jenkins; Mayor and City Council of Baltimore, Defendants.

No. 89–2754.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1990.

Decided March 8, 1991.

As Amended March 11, 1991.

**790**

Frederick Paul Charleston, Sr., Baltimore, Md., for plaintiffs-appellants.

Robert Charles Verderaime, Verderaime & Dubois, P.A., Baltimore, Md., for appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and SMITH, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

EDWARD S. SMITH, Senior Circuit Judge:

Plaintiff-appellant brought suit against defendant-appellee under 42 U.S.C. § 1983.[1] Appellant alleges that the deadly force used by appellee police officer in a prostitution arrest was unreasonable and in violation of his constitutional rights. The police officer shot the appellant causing

1. (1988).

2. The common law claims tried included battery, conspiracy, and loss of consortium. The negligence claim was dismissed. The original

him to suffer permanent injury. The case was tried to a jury on federal and common law claims.[2] The trial judge excluded evidence of the officer's alleged violation of police procedures. Additionally, upon appellee's motion for a protective order, the judge rejected appellant's request to conduct a videotaped deposition of the officer in which re-enactment of the shooting was to take place. The jury returned a verdict for defendant on all counts. Plaintiff appeals, urging this Court to reverse the district court's decision due to its alleged error and abuse of discretion. We affirm the judgment of the district court.

*Facts*

On the evening of May 12, 1988, Baltimore City Police Officer Ernestine Ruffin, while working for the vice squad, observed a woman believed to be a prostitute entering a vehicle with a man. Officer Ruffin and three other officers, each in plain clothes and operating an unmarked vehicle, followed the car until it parked. The officers began to approach the car from various directions without flashlights, while keeping in radio contact with one another.

Officer Ruffin observed an illegal sex act in progress. With her police badge hanging from her neck, Ruffin opened the door of the car with her left hand, identified herself as a police officer, and ordered the two passengers to place their hands in view. When neither complied, Ruffin pointed the drawn revolver in her right hand into the vehicle and repeated the order. Ruffin then observed appellant Leonard Greenidge reach for a long cylindrical object from behind the seat, which she believed to be a shotgun (the object later turned out to be a wooden nightstick). Ruffin fired her weapon at Greenidge. The bullet struck him in the jaw and lodged near the spinal cord, causing permanent injury. Greenidge now slurs his speech, limps and is unable to work.

complaint alleged that defendant's conduct violated amendments I, IV, V, VIII, and XIV to the United States Constitution and 42 U.S.C. §§ 1983, 1985, 1986, and 1988 (1988).

At the jury trial, the judge excluded evidence of the officer's alleged violation of police procedures immediately preceding the arrest and rejected appellant's request to re-enact the shooting by a videotaped deposition of the officer. The jury returned its verdict in favor of defendant on all counts.

### Issues

Two issues presented to this Court for review are:

I. Did the district court err in excluding evidence of the officer's actions leading up to the time immediately before the arrest?

II. Did the district court abuse its discretion in refusing to permit appellant to conduct a videotaped deposition in which the reenactment of the shooting was to take place?

### I

Appellant contends that the district court's exclusion of evidence showing the police officer's conduct leading up to the time immediately before the arrest constituted reversible error. Appellant argued that under the totality of the circumstances test set forth in *Graham v. Connor*[3] certain evidence should have been admitted as an important part of the reasonableness inquiry. The police officer allegedly violated standard police procedure for night time prostitution arrests by not employing proper backup and not using a flashlight. Appellant asserts that these facts are probative to the reasonableness inquiry because the appellee recklessly created a dangerous situation during the arrest.

Appellee replies that appellant's reading of *Graham* was overly broad because the *Graham* court focused on the moment when the decision to use force was made and judged the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene.

Before going into the discussion about the correct reading of the *Graham* test, we recognize that the scope of appellate review is restricted and a trial judge's factual findings are to be overturned only if they are "clearly erroneous."[4] A procedural ruling shall stand unless it is the product of an abuse of discretion.[5]

In our view, both parties correctly looked to *Graham* for guidance because the Supreme Court there for the first time clarified that *"all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest ... of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...."[6] However, our reading of *Graham* prompts us to agree with appellees in their interpretation of the Supreme Court's decision.

After deciding that the "objective reasonableness" test was the correct test under which the police officer's use of excessive force should be scrutinized, the Supreme Court explained the factors to be considered when applying this objective test.

[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.[7]

Furthermore, the Supreme Court argued that the "reasonableness" of an officer's particular use of force "must be judged from the perspective of a reasonable officer *on the scene,* rather than with the 20/20 vision of hindsight."[8] Most significantly, the Court further elaborated that

---

**3.** 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

**4.** *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

**5.** *Persinger v. Norfolk & Western Ry. Co.,* 920 F.2d 1185, 1187 (4th Cir.1990).

**6.** *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871 (emphasis in original).

**7.** *Id.* at 396, 109 S.Ct. at 1871.

**8.** *Id.* at 396, 109 S.Ct. at 1871 (emphasis added).

"reasonableness" meant the "standard of reasonableness *at the moment*," and that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[9]

The Court seemed to have relied upon the "split-second judgments" that were required to be made and focused on the reasonableness of the conduct "at the moment" when the decision to use certain force was made. Applying this reading to the present case, the *Graham* decision contradicts appellants' argument that, in determining reasonableness, the chain of events ought to be traced backward to the officer's misconduct of failing to comply with the standard police procedures for night-time prostitution arrests.

Federal appellate courts have largely followed the *Graham* test.[10] Appellees cited two Seventh Circuit cases prior to *Graham* to explain the application of the Fourth Amendment's "objective reasonableness" standard. After reviewing these cases, we agree that the Seventh Circuit's holdings are helpful in determining the present case. On the same day, the Seventh Circuit handed down two decisions, *Ford v. Childers*[11] and *Sherrod v. Berry*.[12] In *Ford*, suit was brought by plaintiff under 42 U.S.C. § 1983 alleging Fourth and Fourteenth Amendment rights violation by a police officer who shot the plaintiff as he was fleeing from the scene of an armed bank robbery.[13] In *Sherrod*, a similar suit was initiated by

plaintiff alleging that the officer's conduct in stopping the vehicle and using deadly force was unreasonable.[14] In both cases the court applied the Fourth Amendment's "objective reasonableness" standard by requiring that the officer's "liability be determined *exclusively* upon an examination and weighing of the information [the officers] possessed *immediately prior to and at the very moment [they] fired the fatal shot[s]*."[15]

■ In light of the Seventh Circuit's explicit time frame requirement in determining reasonableness and the Supreme Court's focus on the very moment when the officer makes the "split-second judgments," we are persuaded that events which occurred before Officer Ruffin opened the car door and identified herself to the passengers are not probative of the reasonableness of Ruffin's decision to fire the shot. Thus, the events are not relevant[16] and are inadmissible.[17] We conclude the district court did not abuse its discretion by excluding evidence of the officer's actions leading up to the time immediately prior to the shooting. Because the judge's conclusion did not involve an abuse of discretion, the trial court's decision will not be disturbed.

## II

Appellant also contended that the trial judge abused his discretion by refusing, prior to trial, to allow the appellant to make a videotaped deposition of Officer Ruffin in which re-enactment of the shoot-

---

9. *Id.* (emphasis added).

10. *See, e.g., Hammer v. Gross,* 884 F.2d 1200, 1206 (9th Cir.1989) (force used by officer involving physical restraint so that blood sample could be taken from a drunk driving suspect was not excessive under *Graham*'s "objective reasonableness" test); *Brown v. Glossip,* 878 F.2d 871, 873 (5th Cir.1989) (officer's qualified immunity defense against charge of excessive force used during arrest was valid pursuant to *Graham* where the Supreme Court gave deference to the need for "split-second judgments" by officers in dangerous situations); *Johnson v. Morel,* 876 F.2d 477, 479 (5th Cir.1989) (arrestee's excessive force charge against arresting officer under Section 1983 must be judged un-

der *Graham* test of "perspective of a reasonable officer on the scene").

11. 855 F.2d 1271 (7th Cir.1988).

12. 856 F.2d 802 (7th Cir.1988) (en banc).

13. *Ford,* 855 F.2d at 1272.

14. *Sherrod,* 856 F.2d at 804.

15. *Ford,* 855 F.2d at 1275 (quoting *Sherrod,* 856 F.2d at 805) (emphasis added).

16. Fed.R.Evid. 401.

17. Fed.R.Evid. 402.

ing was to take place. The trial court listed three reasons for the denial. The court found that, first, accuracy of the re-enactment could not be assured; second, although plaintiff's expert indicated that the taking of a videotaped deposition would be "most helpful" to him in reaching his opinion, he did not state that the video-taped deposition was necessary; third, the taking of the videotaped deposition at the actual site would create public disturbance.

However, appellant argued that the video was a necessary ingredient in a forensic pathologist's evaluation of the officer's claim of self defense and essential to the jury's understanding of the incident. Appellee replied that the district court properly granted her motion for a protective order and refused to allow the videotaped deposition. Appellee argued that video-taped depositions are necessary only when the deponent will not be available to testify at trial and when the accuracy of the re-enactment can be assured, but neither of these circumstances were present in the case at bar.

We recognize the trial judge's discretion in allowing or disallowing the taking of videotaped depositions requested by a plaintiff. The utilization of videotaped depositions is not uncommon in appropriate situations.[18] The videotaped deposition is appropriate usually when the witness is unavailable to testify in court.[19] In the present case, the witness was readily available, and the trial judge decided that an accurate re-enactment could not be assured. He exercised his discretion in disallowing the re-enactment. We see no abuse of discretion after reviewing the record. Absent the abuse, the district court's procedural ruling is to be upheld.

### Conclusion

The present case unquestionably involves an unfortunate permanent injury to appellant caused by the arresting police officer, who made the split-second judgment to shoot after seeing appellant reach for a shotgun-like object which turned out to be a wooden nightstick. However, on the question of reasonableness of the officer's use of force at the jury trial, we cannot say that the district court erred in exercising its discretion to exclude certain evidence which it believed to be irrelevant. Nor can we say that the trial court abused its discretion in denying appellant's request for a videotaped deposition. We have considered all of the contentions presented by appellant and find them insufficient to merit reversal of the judgment below.

AFFIRMED

---

**18.** *See, e.g., Falwell v. Flynt,* 797 F.2d 1270 (4th Cir.1986).

**19.** *See In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 754 (E.D.N.Y.1980).