8 F.3d 823
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Glenn Keith WEST, Plaintiff-Appellant,
v.
ROBERT RAIMOND, Officer; Officer Butler, Prince George's
County Police Department; David S. Skarwecki; Russel P.
Tedesco; Prince George's County Police Department; Parris
N. Glendening, County Executive; Richard Logue; Stephen L.
Folkee; Gregory Walters, Defendants-Appellees.
Glenn Keith WEST, Plaintiff-Appellee,
v.
ROBERT RAIMOND, Officer; Officer Butler, Prince George's
County Police Department; David S. Skarwecki; Russel P.
Tedesco; Prince George's County Police Department; Parris
N. Glendening, County Executive; Richard Logue; Stephen L.
Folkee; Gregory Walters, Defendants-Appellants.
 No. 92-1167.
 No. 92-1172.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1993.
Decided: October 19, 1993.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore.
 ARGUED: Jennifer Alisa Smith, Fair & Associates, for Appellants.
 Thomas Joseph Spain, Associate County Attorney, Sean Daniel Wallace, Associate County Attorney, for Appellees.
 ON BRIEF: Carrie L. Fair, Fair & Associates, Jo M. Glasco, for Appellants.
 Michael P. Whalen, County Attorney, Michael O. Connaughton, Deputy County Attorney, for Appellees.
 D.Md
 AFFIRMED
 Before LUTTIG, Circuit Judge, SPROUSE, Senior Circuit Judge, and KISER, Chief United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 On November 16, 1988, Glenn Keith West ("West") brought this action against the Prince George's County Police Department and several Prince George's County Police Officers ("Police Officers") pursuant to Title 42, United States Code, Section 1983 alleging violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and various state tort claims. On November 18, 1987, West drove his motorcycle at excessive speeds and eluded numerous Police Officers, who were chasing him, for more than 15 miles. The chase abruptly ended when West collided with a police cruiser. Thereafter, the Police Officers employed a police dog to assist in their apprehension of West. Judge Garbis granted the defendant's pretrial motion in limine which prevented West's police expert from testifying as to police procedure. Judge Garbis also ruled that the fact that the Police Officers had violated departmental policy by using more than two cars to pursue West for a misdemeanor speeding offense was not allowed to be presented to the jury.
 
 
 2
 The case was tried to a jury, and the jury returned its special verdict and interrogatories in favor of all the Police Officers. The court subsequently ordered that "[J]udgment shall BE AND HEREBY IS entered in favor of all Defendants against Plaintiff, Glenn Keith West, without costs." On December 30, 1991, West filed a request for new trial. On January 8, 1992, Judge Garbis denied this request and reaffirmed his initial judgment. On January 20, 1992, West filed a notice of appeal. West claims that the district court erred by disallowing his claim that the Police Officers used excessive force in the" pursuit" that led to his apprehension. Specifically, West claims that the court abused its discretion in not admitting the provisions of the General Orders Manual that related to the number of cars allowed in pursuit of a misdemeanor offender. West also appeals that the district court improperly denied his request to permit an expert witness to testify as to the proper procedures relating to the handling of police dogs. West further appeals the district court's denial of his motion for a new trial. The appellees have cross-appealed the district court's refusal to award costs in this case. We affirm.
 
 
 3
 * On November 18, 1987, West drove his motorcycle at speeds in excess of 100 miles per hour to elude Police Officers, who chased him for more than 15 miles. Officer David Skarwecki ("Skarwecki") was the first to observe West speeding. Officer Skarwecki activated his emergency warning equipment, accelerated to 105 miles per hour, broadcasted the fact of the pursuit, a general description of the motorcycle, the rider, and the route of pursuit. Eventually, Skarwecki lost sight of the motorcycle. [West claims that he was late for class, and he was traveling approximately 70 miles per hour. He saw a police car with its headlights on, but did not think it was unusual. West stopped at a traffic light and turned onto route 450.]
 
 
 4
 Officer Steven L. Folkee ("Folkee"), observed a motorcycle and operator on route 450 at a normal rate of speed, and Officer Folkee activated his emergency equipment and followed the motorcyclist. [West Claims that Officer Folkee did not have his emergency equipment on.] West turned into a dead end residential development and Officer Folkee followed. Officer Folkee saw West make a u-turn, Officer Folkee maneuvered his vehicle to the outbound curb and stopped. West jumped the curb, drove past the front of Folkee's cruiser, and reentered the roadway. [West thought that the officer was trying to hit him. West was frightened and tried to get away from the officer. West decided to return home.] Officer Folkee observed and transmitted the motorcycle license tag number. Officer Folkee continued pursuit, left the residential subdivision, and continued to follow West as he turned on to Church Road. [West was not aware of his speed at this point in time.] Shortly thereafter, Officer Folkee had to discontinue his pursuit when his radiator blew a fitting.
 
 
 5
 Officer Skarwecki, who was following Officer Folkee, continued to travel south on Church even though he did not have West in sight. [West claims that by this time he was extremely frightened. West stopped and hid behind a truck that was parked in a driveway past Tall Oaks School. West watched an officer drive by and then pulled out from behind the truck and went north on Church Road.] Numerous Police Officers were converging upon Church Road from various directions. Officer Skarwecki observed West heading toward him at a high rate of speed and made a u-turn and followed West. [West claims that all of the police officers had their emergency equipment activated at this point.]
 
 
 6
 Officer Robert W. Raimond ("Raimond") was proceeding slowly south on Church Road when he observed West traveling north in the southbound lane toward him. Officer Raimond thought the motorcycle would pass to his right, and he turned slightly to the left and came to a stop in the center of the road. West collided with the front left quarter of the police car. At impact, West was thrown several yards from his motorcycle. Officer Raimond testified that West had room to pass the police vehicle on either side, but "... he maneuvered back and forth and wound up in my lane again." After the accident, Officer Raimond exited his vehicle, drew his handgun, and remained by his vehicle. [West claims that Officer Raimond turned his vehicle and hit his motorcycle on the side.]
 
 
 7
 Officer Michael Butler ("Butler"), a K-9 handler, was following Officer Raimond when the collision occurred. Butler immediately exited his vehicle with his dog and yelled to West to stay on the ground. West attempted to rise to his feet and Butler released the dog. [West says that Officer Butler did not give such a warning; that he did not attempt to rise to his feet; and that Officer Butler immediately released his dog.] The dog apprehended West. Butler advised West to stop struggling. When West stopped struggling, Officer Butler immediately withdrew the police dog. [West claims that Officer Butler teased him with the police dog and hit him before Officer Butler finally took his dog away.]
 
 
 8
 Officer Richard James Logue, Jr. ("Logue") was following Officers Raimond and Butler but did not see the accident since his view was obstructed by the two patrol cars in front of him. Officer Logue exited his car, drew his service weapon and approached West. [West claims that Officer Logue went over to him and held him down and hit him. West claims that Officer Logue put his knee on his back, held a gun to his head, yelled that he should blow West's brains out, and called West a "stupid nigger."]
 
 
 9
 Officer Skarwecki arrived on the accident scene, and jumped out and ran to where West was lying on the side of the road with Officer Logue kneeling beside him. Officer Skarwecki handcuffed West. [West claims that Officer Skarwecki hit West on his groin, mouth, arms, and body parts with a nightstick.] Officers Logue and Skarwecki attempted to pick up West. West screamed that his leg was broken, and the officers laid him back on the ground. This was the first time that Officer Skarwecki became aware that West was injured.
 
 
 10
 By this time Officer Folkee had driven his disabled vehicle to the accident scene. [West claims that Officer Folkee hit his broken leg with a nightstick.] Officer Skarwecki proceeded to cut West's pants leg with a pen knife and observed a significant, but not bloody, laceration of West's left knee. Officer Skarwecki claims that members of the Prince George's County Fire Department, who were trained in first aid, were on the scene within a minute and furnished medical assistance to West.
 
 
 11
 Knowl Boyd, III ("Boyd"), a firefighter/emergency medical technician employed by the Prince George's County Fire Department, was driving a county fire truck on a routine training mission. He heard police sirens approaching and pulled over. After the police cruisers had passed, he continued to travel south on Church Road until he stopped near the accident scene. Shortly thereafter, a police officer flagged him to come over, and he and other members of the fire department administered first aid to West's injuries. Boyd testified that there was no external evidence that West was bleeding. Approximately two or three minutes after West's leg was stabilized, an ambulance arrived on the scene. In the accident, West sustained a dislocated knee, dislocating all four ligaments, and one toe had to be amputated.
 
 
 12
 Marcus Wright ("Wright"), a teacher at the Tall Oaks Vocational School, observed West's motorcycle collide with Officer Raimond's vehicle that was either stopped or coming to a stop. He further observed the police dog shaking West "[L]ike a dishrag" before Officer Butler retrieved the dog, and he noted that the fire truck arrived on the scene almost immediately.
 
 
 13
 Two other Police Officers, who were not involved in the pursuit of West, also arrived at the accident scene. Officer Russell P. Tedesco ("Tedesco"), a sector supervisor in charge of the geographic area where the apprehension was made, first arrived on the scene when medical personnel were moving West to the ambulance. Officer Gregory G. Walters ("Walters"), an assistant sector supervisor, arrived on the scene of apprehension and observed several Police Officers, their respective patrol cars, and a fire truck. Officer Walters never got closer than 25 to 35 feet of West. After Officer Walters determined that he did not have any responsibility, he got back into his car and left.
 
 II.
 
 14
 Appellant's evidentiary issues are reviewed under an abuse of discretion standard. Mogan v. Marmaduke, 958 F.2d 207 (8th Cir. 1992); the district court's ruling cannot be overturned unless it was manifestly erroneous. Salem v. United States Lines Co., 370 U.S. 31, 35 (1962); Specht v. Jensen, 853 F.2d 805, 810 (10th Cir. 1988).
 
 III.
 
 15
 West contends that his constitutional rights were violated by the Prince George's County Police Officers' excessive use of force which ultimately led to West's apprehension. West, who was being pursued by five police cars, argues that the police officers' violation of their own General Orders Manual, by employing more than two police vehicles in the pursuit of a speeding suspect, amounted to intimidation and excessive use of force in his apprehension. West speculates that if the additional three cars had not joined the chase, the accident would not have occurred.
 
 
 16
 In Graham v. Connor, the Supreme Court stated that "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest ... of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard ..." 490 U.S. 386, 395 (1989). According to the Court:
 
 
 17
 The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than the 20/20 vision of hindsight .... [and] the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.
 
 
 18
 Id. at 396-97. Reasonableness means the"standard of reasonableness at the moment," and that "[t]he calculus of reasonableness must embody allowance for the fact the police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id.
 
 
 19
 In Greenidge v. Ruffin, 927 F.2d 789 (4th Cir. 1991), we reviewed a district court's exclusion of evidence in a case where a police officer had violated departmental procedure by approaching a car without a flashlight and without backup immediately preceding the arrest. In Greenidge, Officer Ruffin observed an illegal sex act, opened the car door, announced that she was a police officer, and ordered the occupants to place their hands in view. The occupants did not comply, and one reached for a cylindrical object. Officer Ruffin drew her revolver and fired. Officer Ruffin had failed to follow departmental procedure because she did not use a flashlight when approaching the car, nor did she have proper backup. The Greenidge court explained, "we are persuaded that events which occurred before Officer Ruffin opened the car door and identified herself to the passengers are not probative of the reasonableness of Ruffin's decision to fire the shot. Thus the events are not relevant and are inadmissible." Id. at 792.
 
 
 20
 In the circumstances in this case, we find that the show of force prior to West's apprehension does not amount to an unconstitutional "use of force." Therefore, the district court's refusal to permit West from presenting evidence concerning his novel theory of excessive use of force in pursuit, even though there was no physical contact with plaintiff, was an appropriate exercise of discretion.
 
 IV.
 
 21
 West asserts that the trial court erred in granting the defendant's motion in limine excluding the testimony of Robert DiGrazia ("DiGrazia"), an expert witness on police procedure. DiGrazia was prepared to testify on the procedure for using a canine in an arrest, the proper procedure for the pursuit of a misdemeanor offender, and the circumstances when force could be used to effectuate an arrest. West argues that without expert testimony, the jury had no means of evaluating the amount of force that is allowed in a given situation. We disagree. The various versions of what occurred were factual issues to be determined by the jury, and expert testimony would not have aided the jury in its attempts to reconcile what actually took place at the time of West's apprehension. Furthermore, the expert's testimony as to what took place before West's apprehension was irrelevant for the same reasons that violations of the police department manual were not probative of West's excessive force claim. Everyone agrees that if the Police Officers had used the force which West claims was used, then such a use of force would have been unreasonable under the circumstances in this case. In granting the officers' motion in limine the district court relied upon Wells v. Smith, 778 F. Supp. 7 (D. Md. 1991).
 
 
 22
 In Wells, the court determined that expert witnesses would not be permitted to testify in a use of excessive force by a police officer case. The Wells court, relying on Graham v. Connor, held "that the question of reasonableness is quintessentially a matter of applying the common sense and the community sense of the jury to a particular set of facts and thus, it represents a community judgment." Wells, 778 F. Supp. at 8. The Wells court excluded expert testimony on the issue of the "reasonableness of use of force" because it would turn the reasonableness question into a credibility contest between the experts. According to the Wells court, this in not the type of case you need expert opinions on.
 
 
 23
 In Kopf v. Wing, 942 F.2d 265, 267 (4th Cir. 1991), cert. denied, Prince George's County v. Kopf, 112 S.Ct. 1179 (1992), the district court granted summary judgment in a case involving a dog bite. Expert affidavits before the court indicated that the release of a dog without giving a suspect an opportunity to surrender was contrary to the proper use of the animal, and that a police dog should be used to locate a subject-not to apprehend the subject. In Kopf, we ruled that summary judgment was improper because a jury could have found that the degree of force was unreasonable. In this case, there was no issue as to the standards of conduct that apply to the Police Officers. Had the facts been as West alleged, then it would have been unreasonable for the Police Officers to act in such a manner. However, this case involved the interpretations of the facts, not of complicated police procedures.
 
 
 24
 Federal Rules of Evidence 702 provides for the admissibility of expert testimony when it "will assist the trier of fact to understand the evidence or determine a fact in issue." F.R.E. 702. The proffered evidence was not of a scientific or technical nature such that an average juror would need assistance in understanding it. The factual questions in this case, e.g., whether Officer Raimond rammed his cruiser into West's motorcycle, and whether each of the defendants thereafter abused West, are the kind of controversies resolved by juries every day without the necessity of the special knowledge of experts. In these circumstances the district court's exclusion of expert testimony on proper police procedure was a proper exercise of discretion.
 
 V.
 
 25
 In determining whether to grant a new trial, the district court may weigh the evidence, and its decision to grant or deny the motion for a new trial is reversed only for an abuse of discretion. Hamilton v. 1st Source Bank, 895 F.2d 159, 162 (4th Cir. 1990), vacated, in part, on reh'g, en banc, remanded, Hamilton v. 1st Source Bank, 928 F.2d 86 (4th Cir. 1990). Or put another way, the court should exercise its discretion for granting a new trial whenever it is necessary to prevent injustice. Gill v. Rollins Protective Services Co., 836 F.2d 194 (4th Cir. 1987); Whalen v. Roanoke County Bd. of Supervisors, 769 F.2d 221 (4th Cir. 1985), different results reached on reh'g, en banc, Whalen v. Roanoke County Bd. of Supervisors, 797 F.2d 170 (4th Cir. 1986); Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 352-53 (4th Cir. 1941).
 
 
 26
 West alleges that the jury could not find that it was reasonable for Officer Butler to release his dog after such a serious accident. The credibility of a witness' testimony is to be judged by the trier of fact. In denying West's post-trial motion, the trial court reviewed the evidence and concluded "the jury chose not to believe the Plaintiff, but to believe everyone else." The issues were hotly debated, and the jury had to reconcile vastly different versions of the facts. Based upon the evidence in this case, we find that the district court's denial of West's motion for a new trial did not amount to an abuse of discretion.
 
 VI.
 
 27
 The Police Officers assert that the trial court erred in entering judgment for all the defendants without costs. While an award of costs is always a matter of discretion residing with the court, Federal Rule of Civil Procedure 54(d), we have stated that the trial court "[M]ay not depart from the 'normal practice' of awarding fees to the prevailing party [who has requested costs] without first articulating some good reason for doing so." Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc, 899 F.2d 291, 296 (4th Cir. 1990) ( citing Constantino v. American S/T Archilles, 580 F.2d 121, 123 (4th Cir. 1978)). The Police Officers argue that since the trial court failed to give a reason for departing from the standard practice of awarding costs to prevailing parties, the district court's failure to grant costs amounted to reversible error. We disagree.
 
 
 28
 The issue of costs was not properly preserved for appeal. In order for an issue to be appealable, the moving party must raise the question at the trial level to preserve the issue for appeal. This court has consistently ruled that questions not raised and properly preserved in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances. United States v. Mebane, 839 F.2d 230, 232 (4th Cir. 1988); North River Ins. Co. v. Stefanou, 831 F.2d 484, 487 (4th Cir. 1987), cert. denied, Stefanou v. North River Ins. Co., 486 U.S. 1007 (1988); Malbon v. Pennsylvania Millers Mut. Ins. Co., 636 F.2d 936, 941 (4th Cir. 1980); United States v. One 1971 Mercedes Benz, 542 F.2d 912, 915 (4th Cir. 1976). While an exception to this rule has been recognized to prevent an injustice, Ricard v. Birch, 529 F.2d 214 (4th Cir. 1975), such an injustice does not exist in this case. The district court did not deny the Police Officer's motion for costs. The Police Officers never made a request for costs, and without such a request the traditional "American Rule"-that parties pay for their own attorney's fees-would apply.
 
 
 29
 Furthermore, district court of Maryland local rule 109(1) states:
 
 
 30
 Any party seeking costs shall file a bill of costs supported by an affidavit within 20 days of judgment or entry of an order denying a motion filed under Fed. R. Civ. P. 50(b), 52(b), or 59 ... Non-compliance with these time limitations shall be deemed a waiver of costs.
 
 
 31
 The record is devoid of any indication that the Police Officers filed the required bill of costs accompanied by an affidavit. Thus, the
 
 
 32
 Police Officers waived their rights to costs by failing to request costs from the trial court. Accordingly, the district court's judgment order which denied costs was appropriate in this case.
 
 CONCLUSION
 
 33
 For the reasons stated above, the judgment of the district court is
 
 
 34
 AFFIRMED.