**Pearl LINDER, Individually and as personal representative of the Estate of Buris T. Linder, Deceased, and B.T. Linder, Jr., Plaintiffs,**

v.

**RICHMOND COUNTY, GEORGIA, Sheriff Charles Webster, William McCarty, and North River Insurance Company, Defendants.**

**No. CV 191–117.**

United States District Court, S.D. Georgia, Augusta Division.

Feb. 11, 1994.

Bobby Lee Cook, Summerville, GA, Craig T. Jones, Bauer, Deitch & Kline, Savannah, GA, for plaintiffs.

James Walton Ellison, Burnside, Wall, Daniel & Ellison, Augusta, GA, for defendants.

## ORDER

BOWEN, District Judge.

Before the Court are Plaintiffs' Motion for Partial Summary Judgment, Defendants' Motion for Summary Judgment, and Defendants' Motion for a Hearing on their Motion for Summary Judgment in the above-captioned case. Having reviewed the file, I find that a hearing on these motions is unnecessary, and Defendants' Motion for a Hearing is therefore **DENIED**. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED IN PART,** and Plaintiffs' Motion for Partial Summary Judgment is **DENIED AS MOOT**.

### I. Background

On June 6, 1991, at approximately 3:10 a.m., Plaintiff Pearl Linder dialed "911" on her telephone and informed a Richmond County Sheriff's Department dispatcher that a burglary was in progress at the Linders' residence at 1945 Olive Road, Augusta, Georgia. Mrs. Linder informed the dispatcher that someone had entered the garage behind their house and set off a small alarm which was attached to their outside freezer. Mrs. Linder remained on the phone with the dispatcher while deputies were dispatched to the scene.

Deputy William McCarty, a defendant herein, was the first officer to arrive at the Linders' residence. Deputy McCarty parked

his patrol vehicle in front of a neighboring house, advised the dispatcher he had arrived at the location, cleared the channel on his portable radio, and then began his way down the Linders' driveway towards the garage. The dispatcher told Mrs. Linder that a deputy had arrived on the scene.

At some point during Mrs. Linder's 911 call, Mrs. Linder's husband, Buris T. Linder, who was 88 years old and had some difficulty hearing, left his home against his wife's requests and went out into the backyard with a loaded pistol. Mrs. Linder apparently *did not tell the dispatcher* that Mr. Linder had gone outside or that he was armed. Mrs. Linder also *did not notify her husband* that an officer had arrived on the scene.

As Deputy McCarty turned the corner of the house and entered into the backyard, he encountered Mr. Linder. The following sequence of events and circumstances surrounding the encounter are in dispute. Deputy McCarty claims, through an affidavit and deposition testimony, that when he turned the corner of the house he observed a man wearing something red and holding a gun in his hand.[1] Deputy McCarty says that he immediately pointed his gun at the man and told the man to drop his gun. The deputy claims that the man, which the deputy later found out to be Mr. Linder, turned towards him and fired a shot at the deputy while saying "who is it?". Deputy McCarty claims that, believing his own life to be in danger, he fired two quick shots at the man. One of Deputy McCarty's shots hit the man in the abdomen and inflicted fatal injuries. The other shot missed the man but went through the garage and struck the reported prowler, who had been hiding inside the garage during the entire encounter. Deputy Robert Cross, who was the second officer on the scene, testified in his deposition that Deputy McCarty told Cross immediately after the shooting that Mr. Linder "had shot at" Deputy McCarty. Depo. of Cross, at 31.

Other accounts of the sequence differ slightly from Deputy McCarty's. According to Mrs. Linder, there was one gunshot, followed by a voice saying "drop your gun," followed by two more gunshots. Depo. of Linder, at 73. According to Deputy Richard Parkman (whose equivocal deposition testimony centers on his arrival at the scene seconds after the shooting and on a quick conversation with Deputy McCarty at that time), the man was facing away from Deputy McCarty when McCarty said "drop your gun," the man then fired his gun in the direction of the garage, the man then turned towards Deputy McCarty while pointing the gun at him, and Deputy McCarty then shot the man. Depo. of Parkman, at 23–24.

Subsequent investigation and ballistics tests did not resolve the dispute as to whether Mr. Linder was facing Deputy McCarty or the garage when Mr. Linder fired his pistol. The bullet from Mr. Linder's gun was never found. By all accounts, however, Mr. Linder *at some point* turned towards Deputy McCarty while holding a gun in his hand.

Mrs. Linder and her son now bring these federal constitutional and supplemental state law claims against Deputy McCarty, Richmond County, Sheriff Charles Webster, and the North River Insurance Company (surety of Sheriff Webster's bond). Plaintiffs specifically allege the following: that Deputy McCarty's actions constituted an unreasonable seizure in violation of Mr. Linder's rights under the Fourth Amendment of the United States Constitution, actionable under

---

1. Plaintiffs' counsel has stated that Deputy McCarty "immediately recognized Mr. Linder as being the homeowner rather than the burglar" and "instantly recognized [Mr. Linder] as being an elderly gentleman wearing a bathrobe." Plaintiffs' Opposition Brief, at 2, 5.

These statements distort the record and ignore Deputy McCarty's response to counsel's direct question on page 78, lines 13–17, of his deposition. McCarty's response and affidavit testimony indicate that McCarty did not realize the man was the homeowner or that the man was wearing a bathrobe until *after* the shots were fired.

Even if true, Plaintiffs' statements would not have changed the outcome of these motions because if Deputy McCarty had immediately recognized Mr. Linder as the homeowner, Deputy McCarty would still have been justified in firing if the homeowner was pointing a gun at him and McCarty reasonably believed his own life was in danger. Nevertheless, I caution Plaintiff's counsel about misrepresenting the record in briefs before the Court.

42 U.S.C. § 1983; that Richmond County and Sheriff Webster inadequately trained their deputies and that such inadequate training was a moving force of Mr. Linder's constitutional deprivation; and that Deputy McCarty's and Sheriff Webster's actions constituted a breach of bond conditions[2] for which the Plaintiffs may recover directly against Defendant North River Insurance Company.

## II. Analysis

### A. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case . . ., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the

non-moving party cannot meet its burden at trial is *not* sufficient, *Clark,* 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving parties notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving parties—and, if necessary, the non-moving parties—have carried their burdens as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

### B. Defendants' Motion for Summary Judgment

The Defendants have moved for summary judgment on several grounds. Defendants first assert that Deputy McCarty's actions, as a matter of law, do not constitute exces-

---

**2.** Plaintiffs have withdrawn all other state law claims alleged in their complaint. *See* Plaintiffs'

November 6, 1992, Opposition Brief, at 32.

sive force under the Fourth Amendment. Defendants further assert that Deputy McCarty is entitled to the protection of qualified immunity for his actions as a matter of law. Defendants also assert that Richmond County's officer training was reasonable in all respects and that such training could not have been the moving force of any possible deprivation of Mr. Linder's constitutional rights. Finally, Defendants assert that Plaintiffs have failed to allege facts sufficient to support the breach and causation elements of the action on Sheriff Webster's bond. Because I find, based on the totality of the summary judgment evidence, that Deputy McCarty's actions did not constitute excessive force, I reach only the first of Defendants' assertions.

### 1. Fourth Amendment Claim

To prevail in their Fourth Amendment claim against Deputy McCarty, Plaintiffs would have to show that the deputy's use of deadly force against Mr. Linder was objectively unreasonable "in light of the facts and circumstances confronting" him. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). The " 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1871. Furthermore, the

> calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.*

Notably, *Graham* clearly focuses on the importance of "whether the suspect poses an immediate threat to the safety of the officers or others" in the calculation of an officer's reasonableness in a given situation. *Id.* Likewise, the Court in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1

(1985), held that "if the suspect threatens the officer with a weapon ..., deadly force may be used if necessary ..., and if, where feasible, some warning has been given." *Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701.

Viewing the facts in the light most favorable to the Plaintiffs, and in light of the standards set forth above, I find that Deputy McCarty's actions did not constitute a deprivation of Mr. Linder's Fourth Amendment rights. If, as the Plaintiffs allege, Mr. Linder shot his pistol in a direction *other than* at Deputy McCarty, and only then turned towards Deputy McCarty while pointing his gun in the Deputy's direction, Deputy McCarty (or *any* reasonable officer) would still have had good reason to believe that his life was in danger. Even Plaintiffs' expert conceded that "if an officer has someone pointing a gun at him, ... [the officer] has a reasonable belief that his life is in danger." Depo. of Katarsis, at 60. In such circumstances, an officer is justified in using deadly force to protect himself. *Graham, Garner, supra.* Although a warning is required *when feasible* before deadly force is used, *id.,* this Court will not second-guess the adequacy of Deputy McCarty's order for Mr. Linder to "drop the gun" in such a rapidly developing situation.

Much of Plaintiffs' evidence and legal analysis focus on the alleged unreasonableness of Deputy McCarty *prior to* shooting Mr. Linder. Plaintiffs specifically argue that Deputy McCarty was unreasonable in beginning his approach towards the garage before a backup officer arrived, in failing to utilize a position of cover in confronting Mr. Linder, and in failing to use the word "police" in his command to Mr. Linder to drop the gun. However unreasonable these actions may have been,[3] they have no bearing on the reasonableness of Deputy McCarty's actions *at the time he was forced to make the decision* whether to shoot Mr. Linder.

Decisions from the Fourth, Fifth, and Seventh Circuit Courts of Appeals are particularly instructive on this point. In *Greenidge*

---

**3.** I make no findings herein regarding the reasonableness of Deputy McCarty's chosen approach and command, as these factors have no bearing on the sole issue which I decide today: whether Deputy McCarty's actions constituted a deprivation of Mr. Linder's Fourth Amendment rights?

*v. Ruffin,* 927 F.2d 789 (4th Cir.1991), for example, a person shot by a police officer in the course of a prostitution arrest brought a Fourth Amendment claim against the officer for the officer's alleged unreasonable use of deadly force. At the jury trial, the judge excluded evidence regarding the officer's alleged violation of police procedures immediately preceding the arrest in not employing proper backup and in not using a flashlight. The plaintiff in *Greenidge* claimed on appeal that such facts were probative in the reasonableness inquiry because the officer recklessly created a dangerous situation in which the plaintiff was injured.

On appeal, the Fourth Circuit upheld the trial court's exclusion of this evidence. *Id.* at 792. Citing *Graham,* the court held that the reasonableness of an officer's conduct is to be determined *"at the moment"* when the decision to use certain force was made. *Id.* (emphasis added). The *Greenidge* court further rejected the plaintiff's argument that "in determining reasonableness, the chain of events ought to be traced backward to the officer's misconduct of failing to comply with the standard police procedures for nighttime prostitution arrests." *Id.* Such evidence, the court held, is not probative of the reasonableness of the officer's decision to fire the shot, and was thus neither relevant nor admissible. *Id.*

Similarly, the Fifth Circuit has held that if a person's actions cause an officer to believe that the officer was under a threat of serious harm, then the officer's use of deadly force would not be a constitutional violation *even if* the officer had previously failed to follow established police procedures regarding his approach to the scene or his identification of himself as an officer. *Young v. City of Killeen,* 775 F.2d 1349, 1353 (5th Cir.1985); *Fraire v. City of Arlington,* 957 F.2d 1268, 1275 (5th Cir.1992). The *Young* court stated:

> The constitutional right to be free from unreasonable seizure has never been equated by the Court with the right to be free from a negligently executed stop or arrest. There is no question about the

fundamental interest in a person's own life, but it does not follow that a negligent taking of life is a constitutional deprivation.... We hold that no right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts.

*Young,* 775 F.2d at 1353. This is not meant to imply that I find Deputy McCarty's actions preceding the shooting to be negligent. I merely explain that "even a negligent departure from established police procedure does not necessarily signal a violation of constitutional protections." *Fraire,* 957 F.2d at 1276; *accord Ford v. Childers,* 855 F.2d 1271, 1275 (7th Cir.1988) (reasonableness of police officer's shooting of fleeing bank robber determined exclusively upon information the officer possessed immediately prior to and at the very moment he fired and not upon the officer's prior alleged improper positioning in front of bank).

Thus, since an officer is justified in using deadly force if he has reason to believe his own life is in danger, and since any possible negligence in Deputy McCarty's approach to the backyard or in his failure to use the word "police" in his order for Mr. Linder to drop his weapon does not bear upon the reasonableness of his decision to fire once Mr. Linder turned towards him with a gun in his hand, no reasonable jury could find a constitutional violation under any version of the facts in the record. Deputy McCarty's Motion for Summary Judgment on the constitutional claim against him is therefore GRANTED.[4]

### 2. Claims Against Richmond County and Sheriff Webster

Since I find that Deputy McCarty's actions did not constitute a deprivation of Mr. Linder's constitutional rights, neither may I find that Deputy McCarty's actions support a constitutional claim against Sheriff Webster or Richmond County. *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). It surely cannot be said

---

4. Because I find no underlying constitutional violation, I do not reach Deputy McCarty's claim of qualified immunity.

that the Sheriff's or the County's alleged inadequate training or policies caused Mr. Linder to suffer a constitutional deprivation if there was, in fact, no underlying constitutional deprivation. Sheriff Webster's and Richmond County's Motion for Summary Judgment is therefore GRANTED with respect to the constitutional claims against them.[5]

### 3. State Law Action on Sheriff's Bond

As I noted above, Plaintiffs have withdrawn all state law claims except for their action under Georgia law on Sheriff Webster's bond. Since I have granted Defendants' summary judgment motion on the federal constitutional claims against them, there is no independent basis for subject matter jurisdiction over this matter. I decline to retain discretionary supplemental jurisdiction over the remaining claim on Sheriff Webster's bond. *See* 28 U.S.C. § 1367(c)(3). This remaining claim is **DISMISSED** without prejudice.

In dismissing this claim, I note that the findings I have made in other sections of this Order only apply to the constitutional claims and are not meant to apply to the Plaintiffs'

action on the Sheriff's bond. I also note that pursuant to 28 U.S.C. § 1367(d), the period of limitations on this state law claim has been tolled while the claim was pending in this Court, and for some period hereafter according to § 1367(d) and Georgia law.

### III. Conclusion

Since Deputy McCarty's actions did not constitute a deprivation of Mr. Linder's constitutional rights, Defendants' Motion for Summary Judgment is **GRANTED** with respect to the constitutional claims against them. Defendants' Motion for Hearing is **DENIED**, and Plaintiffs' Motion for Partial Summary Judgment on the issue of Richmond County's contingent liability is **DENIED AS MOOT**. The claim on Sheriff Webster's bond is **DISMISSED** without prejudice. The Clerk of the Court shall **CLOSE** the case.

---

5. The result of these motions would likely be the same even if I were to find that there was a constitutional deprivation against Mr. Linder. Deputy McCarty would likely be immune from suit on grounds of qualified immunity, and Sheriff Webster and Richmond County would likely prevail on the moving force/causation element of the constitutional claims against them. *See City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). I need not undertake these analyses for the present motions, however.