### Ronald K. DREWITT, Plaintiff–Appellant,

v.

### Fred L. PRATT; Pizza Hut of America, Inc., Defendants–Appellees,

### City of Norfolk, Party-in-interest.

### No. 92–2423.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1993.

Decided July 22, 1993.

---

Lance Arlington Jackson, Rutter & Montagna, Norfolk, VA, argued (Robert L. Mills, on brief), for plaintiff-appellant.

Allan S. Reynolds, Reynolds, Smith & Winters, P.C., Norfolk, VA, argued, for defendants-appellees.

Before WILKINS, Circuit Judge, SPROUSE, Senior Circuit Judge, and HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation.

## OPINION

HALLANAN, District Judge:

This appeal arises from the district court's grant of summary judgment in favor of Defendant–Appellee Fred L. Pratt on the basis of qualified immunity. Because we agree both with the district court's finding that no genuine issue of material fact exists and with its application of the law, we affirm its decision.

### I.

#### A.

Defendant–Appellee Fred L. Pratt is a police officer for the City of Norfolk, Va., who works during his off-duty hours as a part-time security guard for a local Pizza Hut. During the evening of August 3, 1990, while working at the Pizza Hut, Officer Pratt was informed by other employees that a vehicle was being driven in a reckless manner on Arkansas Avenue. While investigating their complaint, Officer Pratt observed a vehicle with its headlights off being driven by the Plaintiff–Appellant, Ronald K. Drewitt. Continuing to watch the vehicle, Officer Pratt observed it alternately accelerate and stop and, shortly thereafter, collide with a parked pick-up truck and begin to pull away.

With the intention to arrest the driver for reckless driving, Officer Pratt ran toward the vehicle with his service revolver drawn. Officer Pratt contends that he yelled twice at such time, "Police Officer, stop!" and twice more, "Police Officer, turn the vehicle off!" Officer Pratt, however, was not in uniform at such time and did not display the badge which he carried in his pocket. When the vehicle came to a stop, Officer Pratt crossed in front of the vehicle heading towards its driver's side. Officer Pratt contends that while he was still in front of the vehicle, the vehicle's headlights were activated and the vehicle sped forward towards him.

At the time of impact with the vehicle, Officer Pratt attempted to position his body in a manner so as to avoid being dragged underneath it. His maneuver succeeded and when struck by the vehicle he rolled over the front fender onto the hood. Officer Pratt contends that while on the hood of the vehicle he fired one shot from his weapon into the windshield in an attempt to stop the vehicle and protect himself. His gun accidentally discharged a second time after he fell off the hood at the area of the driver's side front fender. Unbeknownst to him at the time, both bullets struck Drewitt.

Drewitt contends that he remembers little about the evening. He admits that prior to the incident he was drinking alcohol with friends at which time he consumed at least four glasses of beer and at least two glasses of wine. At the time of the shooting, he remembers seeing a man approach him with a gun but does not recall anything after that, including hearing Officer Pratt identify himself as a police officer.

#### B.

Following the shooting, Drewitt filed a motion for judgment in the Circuit Court of the City of Norfolk against Officer Pratt and Defendant Pizza Hut of America, Inc., alleging said parties were liable under 42 U.S.C. § 1983 for violating his rights under the Fourth and Fourteenth Amendments of the United States Constitution. Drewitt also sought damages under state law for assault and battery and negligence. The Defendants removed the case to the United States District Court for the Eastern District of Virginia and subsequently moved for summary judgment. Drewitt responded in part by conceding that he had no viable § 1983 claim against Pizza Hut of America, Inc. By Order entered on October 9, 1992, the district court granted Officer Pratt's motion for summary judgment on qualified immunity grounds, dismissed Drewitt's § 1983 claims against the Defendants, and remanded his state law claims.

In analyzing Officer Pratt's motion for summary judgment, the district court first concluded that based on "the nature of the

act performed," *Revene v. Charles County Commissioners*, 882 F.2d 870, 872 (4th Cir. 1989), Officer Pratt was acting under the color of state law when the shooting occurred. The district court next determined in order to properly address Officer Pratt's defense of qualified immunity* that Drewitt's § 1983 claims consisted of (1) unlawful arrest and (2) excessive force.

As to the unlawful arrest claim, the district court concluded that although Officer Pratt's failure to display his badge while attempting to execute a warrantless misdemeanor arrest of Drewitt may have violated Virginia statutory law, *see* Va.Code.Ann. § 19.2–81, it did not rise to a violation of a federal constitutional magnitude. *See Penn v. Commonwealth*, 13 Va.App. 399, 412 S.E.2d 189, 193–94 (1991), *aff'd*, 244 Va. 218, 420 S.E.2d 713 (1992) (warrantless arrest for misdemeanor not committed in officer's presence which violated state law did not rise to level of Fourth Amendment violation); *Graves v. Commonwealth*, No. 1113–88–2, slip op. at 2–3 (Va.Ct.App. July 17, 1990) (unpublished) (failure of non-uniformed police officer to display badge during arrest which violated state law did not rise to violation of Fourth Amendment); *see also Street v. Surdyka*, 492 F.2d 368, 371 (4th Cir.1974) (not all violations of state law regarding arrest procedures constitute violations of a federal constitutional magnitude). Accordingly, because no clearly established constitutional right was violated, the district court held that Officer Pratt was clearly entitled to qualified immunity on such claim.

■ The district court next addressed Drewitt's excessive force claim, initially not-

ing that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in original). The district court also correctly noted that "the fourth amendment limit[s] a police officer's use of deadly force to those situations, among others, where he has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir.1991) (citing *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985)).

Drewitt argued in opposing Officer Pratt's entitlement to qualified immunity that:

> The facts are in dispute as to whether Pratt ran into the road with his gun up in the air, as Marvin Tucker[, a witness,] has testified, or whether Pratt had his gun on his hip. There is also a dispute as to whether Pratt approached Drewitt after he crossed Drewitt's path and was on Drewitt's driver side, about fifteen feet away, as Tucker has testified, or whether Pratt approached Drewiit [sic] from Drewitt's passenger side and was six feet away in front of the car when it moved toward him. Those factual differences create different reasonable inferences as to whether Pratt could have stepped safely out of the way of Drewitt's vehicle when it moved.

After examining relevant case law, the district court concluded that:

> by his conduct. *Mitchell [v. Forsyth*, 472 U.S. 511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985)] ("decisive fact is not that [the officer's] position turned out to be incorrect, but that the question was open at the time he acted").
> Ruling on a defense of qualified immunity therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right.
> *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

---

* As noted by the district court,

The test of qualified immunity for police officers sued under 42 U.S.C. § 1983 is whether in performing discretionary functions, they have engaged in conduct that violates "clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Immunity may thus be established either on the basis that the right allegedly (or actually) violated was not at the time one "clearly established," or that, though "clearly established," (and violated), it was one that a "reasonable" person in the officer's position could have failed to appreciate would be violated

Officer Pratt's actions prior to the shooting, such as whether he properly identified himself as a police officer or whether he was in a position to jump out of the way of the plaintiffs' rapidly accelerating vehicle, relate only to the issue of whether Pratt's arrest procedures were proper or improper. Those actions are not material to Officer Pratt's subsequent decision to shoot the plaintiff in light of the severe threat of physical harm to himself after being thrown on the hood of plaintiff's vehicle. Because Officer Pratt acted reasonably under the circumstances when he shot the plaintiff, he is entitled to qualified immunity.

*Drewitt v. Pratt*, No. 2:92cv13, slip op. at 11–12, 1992 WL 516032 *5 (E.D.Va. October 9, 1992).

Drewitt responded by filing this appeal, wherein he renews his contention that a genuine issue of material fact exists as to the issue of qualified immunity which precludes the entry of summary judgment on behalf of Officer Pratt.

## II.

■ On appeal, a district court's grant of summary judgment is reviewed *de novo*. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir.1988). In discussing the standard for granting summary judgment, the United States Supreme Court has held that

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case

with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In assessing a motion for summary judgment, all justifiable inferences must be drawn in favor of the nonmoving party for "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The court "must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

■ "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. While "[g]enuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross*, 759 F.2d at 364; *accord Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988); *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987); *Ash v. United Parcel Service*, 800 F.2d 409, 411–12 (4th Cir.1986).

■ After reviewing all evidence regarding any alleged genuine issue of material fact,

[t]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Where no genuine issue of material fact exists, this Circuit has noted "the affirmative

obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty*, 818 F.2d at 1128 (quoting *Celotex Corp.*, 477 U.S. at 323–24, 106 S.Ct. at 2553).

### III.

■ Turning now to the merits of the appeal, we note that in reaching its decision the district court relied upon *Graham, supra; Greenidge v. Ruffin*, 927 F.2d 789 (4th Cir. 1991); and *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992). In *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872, the United States Supreme Court noted that the proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." The Court further opined that

> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97, 109 S.Ct. at 1872 (citations omitted).

In *Greenidge*, this Court was asked to determine whether a district court had abused its discretion in excluding evidence which allegedly established that prior to the time at which the plaintiff had been shot by a police officer the officer had violated "standard police procedure for night time prostitution arrests." *Id.* at 791. The plaintiff specifically contended that in so violating standard arrest procedure the officer "recklessly created a dangerous situation during the arrest." *Id.* Relying upon the above principles announced in *Graham*, the Court concluded that "the district court did not abuse its discretion by excluding evidence of the officer's actions leading up to the time immediately prior to the shooting." *Id.* at 792.

In *Fraire*, a case factually similar to that before us, the Fifth Circuit was also faced with an allegation that a police officer's failure to abide by standard police procedure created the dangerous situation which led to his shooting of the plaintiff. In resolving the issue, the Court stated:

> The Plaintiffs have charged that the force Lowery employed was excessive, at least in part because Lowery may not have followed established police procedures in displaying his badge and identifying himself while in plain clothes. The implication is that Lowery thereby manufactured the circumstances that gave rise to the fatal shooting. We rejected a similar argument in *Young [v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir.1985) ]. There, the district court found that the officer had acted negligently and contrary to good police procedure. On appeal, we noted that "[t]he sense in which [the district court] finds excessive force is that the force would have been avoided if [the policeman] had approached Young as required by proper police procedures." We found to the contrary, however, that regardless of what had transpired up until the shooting itself, Young's movements gave the officer reason to believe, at that moment, that there was a threat of physical harm....
>
> We are also guided by the Supreme Court's conclusion in *Tennessee v. Garner*:
>
> "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon ... deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."
>
> At the moment of the shooting, Lowery does not appear to have been trying to hinder Fraire's escape. Rather, as Lowery avers, he clearly appears to have been trying to prevent his own serious injury or

death. Certainly then, because under the rationale of *Garner* Lowery could have used deadly force to prevent Fraire's escape, considering Fraire's actions leading up to the shooting Lowery must have been justified in firing to prevent his own death or great bodily harm.

*Fraire,* 957 F.2d at 1275–76 (footnotes omitted).

■ In light of the holdings in the above cases, we are convinced that Officer Pratt is entitled to qualified immunity herein. Certainly, such cases demonstrate that the failure of Officer Pratt to display his badge when announcing himself as a police officer and demanding Drewitt to stop his vehicle is irrelevant to the issue of whether at the moment of the shooting Officer Pratt had probable cause to believe that Drewitt posed a threat of death or serious bodily harm to him. *See Garner,* 471 U.S. at 11, 105 S.Ct. at 1701; *Slattery,* 939 F.2d at 216. Contrary to the district court's conclusion, however, we do believe that Officer Pratt's exact location in connection to Drewitt's vehicle at the time it sped forward is relevant to such issue. However, as suggested by Officer Pratt, a careful review of the record demonstrates the existence of any genuine issue of material fact thereon to be more imagined than real.

Drewitt essentially relies upon the testimony of Marvin Tucker, a witness to the incident, to create the alleged genuine issue of material fact. Mr. Tucker testified, however, that Officer Pratt "was *in front of the car,* on the left—on the driver's side of the car. Toward the driver's side." (App. 24) (emphasis added). Even interpreting such testimony in the light most favorable to Drewitt, as we must on appeal of a motion for summary judgment, we find no *genuine* issue of *material* fact which would require that the district court's decision be vacated and remanded.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

