# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Barbara Westfall,**
**Plaintiff Below, Petitioner**

**vs) No. 16-0743** (Kanawha County 13-C-1797)

**Estate of Elbert R. Copenhaver;**
**Norma F. Simms, individually, and as**
**executrix of the Estate of Elbert R.**
**Copenhaver; Geary W. Copenhaver;**
**Judith L. Shaffer; Millennium Management**
**One, Inc. d/b/a Gold Key Realty; Calvin J.**
**Canterbury, individually and d/b/a Gold Key**
**Realty; Runyan & Associates, Inc. d/b/a**
**Century 21 Runyan & Associates; and Pamela Loftus,**
**Defendants Below, Respondents**

**FILED**

**April 28, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Barbara Westfall, by counsel Richard A. Monahan, appeals the Circuit Court of Kanawha County's June 3, 2016, order granting summary judgment to respondents. Respondents the Estate of Elbert R. Copenhaver; Norma Simms, individually and as executrix of the Estate of Elbert R. Copenhaver; Geary W. Copenhaver; and Judith L. Shaffer ("the Estate respondents"), by counsel Timothy J. LaFon and Keisha D. May, filed a response in support of the circuit court's order. Respondents Millennium Management One, Inc. d/b/a Gold Key Realty and its real estate agent Calvin J. Canterbury, individually and d/b/a Gold Key Realty ("the Gold Key respondents"), by counsel W. Bradley Sorrells, filed a response in support of the circuit court's order. Respondents Runyan & Associates, Inc. d/b/a Century 21 Runyan & Associates and its real estate agent Pamela Loftus ("the Century 21 respondents"), by counsel David J. Mincer and Andrew R. Herrick, also filed a response in support of the circuit court's order.[1] Additionally, the Court acknowledges the filing of an amicus curiae brief by the West Virginia Association of Realtors, Inc.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these

---

[1] At some points in this decision the Gold Key respondents and the Century 21 respondents are referred to jointly at "the real estate respondents."

1

reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The decedent, Elbert R. Copenhaver, owned a home in Elkview, West Virginia. When Mr. Copenhaver passed away in 2007, his daughter, Norma F. Simms, was appointed executrix of his estate. Ms. Simms, who never resided in the home at issue, engaged the Gold Key respondents to list the property pursuant to a standard listing agreement in September of 2010.[2] As part of a written disclosure as part of the real estate sales process, Ms. Simms indicated there were no hazardous conditions such as a landfill or expansive soil. Petitioner and her husband drove by the property and saw a "for sale" sign, so they stopped and walked around the property. Petitioner hired the Century 21 respondents to assist her in purchasing real estate to be used as her residence.[3] She then viewed the property with her brother and Ms. Loftus, including the outside of the property. When petitioner chose to make an offer on the subject property, Ms. Loftus informed her that a home inspection was recommended but not required. However, petitioner chose not to obtain a home inspection due to budgetary concerns. On September 22, 2011, petitioner purchased the property from Ms. Simms, Geary W. Copenhaver, and Judith L. Shaffer, to be used as petitioner's residence.

On September 20, 2013, petitioner filed a complaint against respondents, asserting claims for intentional, reckless, or negligent fraud; rescission and restitution; breach of contract; and negligence. According to the circuit court, petitioner's claims relate not to the home itself but to the real estate upon which the home sits. Petitioner claims that approximately eight months after she bought the residence and surrounding property, a neighbor showed her a hole under a flowerpot in a portion of the yard that petitioner previously mistakenly believed was owned by that neighbor. Petitioner and her sister then "began investigating the condition of the yard," including using a metal detector. She alleges that they discovered holes in the ground and "a significant amount of metal [that was] located beneath the surface of the property" which petitioner claims she was unaware of when she purchased the property.

---

[2] According to the "Notice of Agency Relationship" between the Estate respondents and the Gold Key respondents, the duties owed to petitioner included the following: diligent exercise of reasonable skill and care in the performance of the agent's duties; a duty of honest and fair dealing and good faith; all property to be offered without regard to race, color, religion, sex, ancestry, physical or mental handicap, national origin or familial status; prompt presentation of all written offers to the owner; disclosure of all facts known to the agent materially affecting the value of desirability of the property; and provision of a true legible copy of every contract to each person signing the contract.

[3] The "Notice of Agency Relationship" entered into between petitioner and the Century 21 respondents defines the duties owed to petitioner as follows: diligent exercise of reasonable skill and care in the performance of the agent's duties; a duty of honest and fair dealing and good faith; all property to be offered without regard to race, color, religion, sex, ancestry, physical or mental handicap, national origin or familial status; prompt presentation of all written offers to the owner; and provision of a true legible copy of every contract to each person signing the contract.

2

Petitioner and her sister, Betty J. Hill, discovered leases that demonstrate that from at least the 1930's through the 1950's a company leased the premises from prior property owners. Those leases permitted the company to utilize the property for "any use and purpose [it] may deem necessary or convenient for the handling, storing, pumping and transportation of oil, gas or gasoline" including "the right to lay, repair and remove pipe lines for water, oil, gas or gasoline, in, or over the property." Petitioner's expert, Dean E. Dawson, includes with his report a photograph from the multiple listing service ("MLS") listing that the circuit court clearly shows a hole in the ground that would be obvious to a casual observer and easily discoverable by anyone walking on the property in the vicinity of the hole. Petitioner alleged that the photograph established that the Gold Key respondents had knowledge of at least one large, hazardous hole on the property. Because the picture was available to all realtors, petitioner asserted that, her agents, the Century 21 respondents, also had knowledge of that hole. She also alleged that the open and obvious hole should have led the real estate companies and agents to question the sellers' written disclosures or to conduct a more thorough inspection and investigation of the property. Further, she argues that they should have disclosed the existence of that hazardous condition to any potential buyers and their agents.

Respondents filed motions for summary judgment, which petitioner opposed. In its June 3, 2016, order granting summary judgment to respondents, the circuit court stated that while petitioner pointed to the written disclosure regarding hazardous conditions for her detrimental reliance claim, she readily admitted in her deposition that she did not rely on the same in purchasing the property. The circuit court also pointed to petitioner's admission that she had free access to the property, including the ability to walk on the property without restriction. Further, she stated that she did not have any communication with the Gold Key respondents prior to closing. She also testified that she did not check any public records to determine whether there were any leases, liens, or other encumbrances on the property prior to purchase. Petitioner hired Robert H. Skeen Jr. to perform a title search, and that report informed petitioner there were no problems or impediments to the title, including the language that the title is free and clear. That opinion does not mention gas or oil leases, but it did note certain reservations of things that were not looked into or addressed.

The circuit court concluded that there was no genuine issue of material fact with respect to petitioner's fraud claim against the Estate respondents. It also found that there was no claim that the real estate respondents engaged in any affirmative conduct that would constitute fraud. After analyzing the facts and evidence before it, the circuit court concluded that there was no genuine issue of material fact and petitioner's fraud claim against the real estate respondents must fail as a matter of law. The circuit court further determined that petitioner's claims for rescission and restitution as a remedy for the alleged misrepresentations or omissions fail as a matter of law.

In addressing petitioner's breach of contract claim, the circuit court found that the real estate respondents were not parties to the purchase agreement. It also held that there was no genuine issue of material fact with regard to petitioner's breach of contract claim as to respondents. Finally, it found that there was no genuine issue of material fact with regard to petitioner's negligence claim. Specifically, the circuit court concluded that the real estate brokers and agents "were under no duty to independently inspect the property" and "assuming that the

complained of conditions substantially affect the value or habitability of the Property, [respondents] still did not have a duty to disclose such conditions as [petitioner] could have discovered the same had she engaged in a reasonably diligent inspection." With regard to the alleged negligence of the Estate respondents, the circuit court found that they were under a duty to disclose defects or conditions which substantially affect the value or habitability of the property if such defects or conditions were known to them, unknown to the purchaser, and if such defects and conditions would not be disclosed by a reasonably diligent inspection. It further found that if the Estate respondents "were aware of the complained of conditions, they did not have a duty to disclose the same as the conditions could have been, and were, discovered by [petitioner] upon a reasonably diligent inspection." Petitioner appeals from that order.

> A circuit court's entry of summary judgment is reviewed *de novo, see* Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994); *Drewitt v. Pratt,* 999 F.2d 774, 778 (4th Cir.1993); and, therefore, we apply the same standard as a circuit court. *Helm v. Western Maryland Ry. Co.,* 838 F.2d 729, 734 (4th Cir.1988).

*Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995).

On appeal, petitioner sets forth five assignments of error. Because the first three assignments of error relate to the alleged concealment of holes on the property and petitioner's reliance on the seller's disclosures regarding the same, we will address these alleged errors jointly. These three assignments of error as set forth by petitioner are as follows: 1) The circuit court committed reversible error in failing to recognize that the Estate respondents concealed at least two holes in the home's yard, thereby preventing their disclosure by a reasonably diligent inspection; 2) The circuit court committed reversible error in failing to consider petitioner's affidavit which establishes that someone had concealed (but not repaired/cured) the hole in the yard that was shown in the photograph attached to the MLS listing so that it was not immediately visible even when she did thoroughly inspect the real estate subsequent to its purchase; and 3) The circuit court committed reversible error in failing to consider that despite the plaintiff's confusion during her deposition about when she received the "Seller's Property Condition Disclosure Form," her signature on the document supports that she actually received and relied upon the disclosure prior to the closing on the real estate. In this regard, petitioner asserts that the circuit court further committed reversible error by failing to recognize that when a seller makes a representation to the buyer that no hazardous condition exists on the property, the buyer is entitled to rely upon such representation and need not make the same degree of diligent inspection of the property that might otherwise be required.

Petitioner asserts that genuine issues of material fact exist which prevent the entry of summary judgment under either theory of fraud – misrepresentation or fraudulent concealment. Petitioner admits that while one hole was evident in the listing photograph, she did not discover a second hole until months after she purchased the property due to its concealment by a flower pot. In support of her contention, she points to her affidavit submitted to the circuit court, though she contends that the circuit court failed to consider that affidavit. In addition, she looks to the "Seller's Property Condition Disclosure Form" wherein the Estate respondents indicated that they were not aware of any hazardous conditions existing on the property. She argues that she is

4

entitled to rely upon that representation, which she asserts negates the need to make a diligent inspection of the property.

As this Court previously set forth,

[w]here a vendor is aware of defects or conditions which substantially affect the value or habitability of the property and the existence of which are unknown to the purchaser and would not be disclosed by a reasonably diligent inspection, then the vendor has a duty to disclose the same to the purchaser. His failure to disclose will give rise to a cause of action in favor of the purchaser.

Syl., *Thacker v. Tyree*, 171 W.Va. 110. 297 S.E.2d 885 (1982). However, in the instant case petitioner has not pointed to anything in the record that suggests that the Estate respondents were aware of the hole under the flower pot or that they took actions to conceal any "defects or conditions which substantially affect the value or habitability of the property." Instead, the evidence shows that none of the respondents actually resided on the property and that the former occupant, Elbert R. Copenhaver, was deceased at the time the property disclosure statement was signed.

During her deposition, petitioner testified that she chose not to walk over the entire property "[b]ecause there was just a beautiful lot of property. . . I didn't think I needed to because it was so pretty with ducks." She also testified that she did not see the disclosure until after the closing on the property. After her initial response indicating that she did not see it until after closing, one of the counsel for respondents confirmed several times that she did not see it until that point, and petitioner never waivered. She then agreed that she could not have relied upon that disclosure in determining whether to purchase the property because she did not see the disclosure until after the purchase had been completed.

In her affidavit, petitioner stated that the listing photographs were never shown to her. She goes on to state that if she had seen the hole as depicted in the listing photograph, she "would have carefully inspected the entire yard and would have asked questions of the real estate agent and the sellers of the property about the cause of the hole." Petitioner also asserted therein that she would have requested that the holes be properly filled before she purchased the property. However, she does not address her review of or reliance upon the disclosure in her affidavit.[4]

To defeat summary judgment, an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained. To determine whether the witness's explanation for the contradictory affidavit is adequate, the circuit court should examine: (1) Whether the deposition afforded the opportunity for direct and cross-examination of the witness; (2) whether the witness had access to pertinent evidence or information prior to or at the time of his or her deposition, or whether the affidavit was based upon newly discovered evidence not known or

---

[4] Petitioner's affidavit is dated approximately two months after the date of her deposition.

5

available at the time of the deposition; and (3) whether the earlier deposition testimony reflects confusion, lack of recollection or other legitimate lack of clarity that the affidavit justifiably attempts to explain.

Syl. Pt. 4, *Kiser v. Caudill*, 215 W.Va. 403, 599 S.E.2d 826 (2004).

Petitioner's affidavit does not contradict her admission that she did not see the disclosure prior to closing, which led to her concession that she could not have relied upon the same. While the affidavit does touch on the alleged fact that none of the respondents showed her photographs of the property, petitioner walked the property before making an offer on the same and repeatedly admitted during her deposition that she chose not to walk on it again. In addition, petitioner does not allege that respondents concealed the photographs from her. Therefore, her affidavit did not cure the defects in her claims that arose during her deposition. For the reasons set forth herein, we find that the circuit court did not err in granting summary judgment related to these first three assignments of error.

Petitioner's fourth and fifth assignments of error stem from the real estate respondents' duties. Specifically, petitioner alleges that the circuit court erred in failing to consider that the real estate agents had a duty to reveal the concealed hazardous conditions on the property in light of their "presumed knowledge" of at least one hole on the property and their knowledge that the sellers declared that no hazardous conditions existed on the "Seller's Property Condition Disclosure." She also contends that the circuit court erred in failing to consider the report of her expert, Mr. Dawson, regarding the real estate respondents' duties and responsibilities to petitioner. In support of her arguments, petitioner states that the circuit court erroneously made its ruling based on the fact that the real estate respondents did not make any direct statements to petitioner regarding the condition of the property and did not know of any hazardous conditions that were concealed from petitioner. As a result of their alleged failure to show petitioner the picture that depicted the obvious hole or disclose the hazardous condition to her, petitioner contends that the real estate respondents breached their duties of utmost good faith, care, loyalty, and honesty owed to her. She also contends that the circuit court's failure to address Mr. Dawson's report in its order granting summary judgment was an abuse of discretion.

As this Court previously found,

[a] vendor's real estate broker may be liable to a purchaser if the broker makes material misrepresentations with regard to the fitness or habitability of residential property or fails to disclose defects or conditions in the property that substantially affect its value or habitability, of which the broker is aware or reasonably should be aware, but the purchaser is unaware and would not discover by a reasonably diligent inspection. It also must be shown that the misrepresentation or concealment was a substantial factor in inducing the purchaser to buy the property.

Syl. Pt. 1, *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994). In *Teter*, we also "decline[d] to hold that a broker has an independent duty to inspect and uncover latent defects on residential premises." *Id.* at 719, 441 S.E.2d at 736.

6

At the outset, we note that petitioner has not set forth a single affirmative representation made by any of the real estate respondents to petitioner regarding the hole in the yard or any of the other alleged defects she claims would have altered her decision to purchase the property. She has admitted that she chose not to walk on the property after contacting the Runyan respondents to represent her in the purchase of the property. In addition, petitioner made the decision not to have a home inspection, despite the Runyan respondents advising her that such inspection was recommended. Petitioner's arguments to this Court essentially ask that we overrule *Teter*. We decline to do so.

Petitioner's argument regarding Mr. Dawson's report is a scant one-paragraph argument simply alleging that because the circuit court did not specifically address Mr. Dawson's report in its order granting summary judgment that the circuit court failed to consider the same. However, in its findings of fact, the circuit court specifically mentions Mr. Dawson's report on page six of that order, noting that the report shows a picture of the property and nearby land. While the circuit court chose not to quote or cite additional portions of this report, it is clear from the language of the order that the circuit court did, in fact, consider and specifically address Mr. Dawson's report before entering its order. Further, the circuit court was not asked by any party to rule upon the admissibility of Mr. Dawson's report. For these reasons, we find no merit to petitioner's final assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 28, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Menis E. Ketchum
Justice Elizabeth D. Walker


**DISSENTING:**

Justice Robin Jean Davis
Justice Margaret L. Workman

7